# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **GREGORIO MACHADO** | : | **DOCKET NO. 2:06-cv-1276**<br>Section P |
| **VS.** | : | **JUDGE MINALDI** |
| **IMMIGRATION & CUSTOMS ENFORCEMENT, ET AL.** | : | **MAGISTRATE JUDGE WILSON** |

## REPORT AND RECOMMENDATION

Currently before the court is a petition for writ of *habeas corpus* filed pursuant to 28 U.S.C. § 2241 by petitioner, Gregorio Machado. This matter was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with 28 U.S.C. § 636(b)(1)(B).

Petitioner is under a final removal order, and he has been in post-removal-order detention since July 29, 1999. In his petition, he challenges his post-removal-order detention as being indefinite and unconstitutional. He claims that there is no significant likelihood of his being removed to Venezuela in the reasonably foreseeable future.

Based upon the evidence in the record, the undersigned determined that an evidentiary hearing was necessary for the adjudication of this *habeas corpus* petition. An evidentiary hearing was held on March 20, 2007, and the evidence was limited to whether there is a significant likelihood of removing Petitioner in the reasonably foreseeable future, whether the petitioner has been detained beyond what is reasonably necessary to secure his removal, and/or whether petitioner has taken steps to hamper the removal efforts of the United States Immigration & Customs Enforcement. [doc. 28].

## FACTUAL SUMMARY

The court will summarize the facts regarding petitioner and his detention as best it can from

the evidence in the record and the testimony presented at the evidentiary hearing.

Petitioner was born on July 11, 1942 in Venezuela. *See* Government Exhibit 1. He entered the United States without inspection on an unknown date. *Id.* Petitioner became a lawful permanent resident of the United States on November 8, 1989. *Id.*

In March, 1998, petitioner was indicted on 12 counts of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956-6800F. On July 28, 1998, petitioner pled guilty to one count of violating 18 U.S.C. § 1956(h), and the other counts were dismissed. As a result of this conviction, petitioner was sentenced to 51 months imprisonment and required to forfeit certain assets. *See USA v. Machado*, 1:97-cr-00238 (S.D. Fla.); Government Exhibit 2. Because of petitioner's cooperation with the United States government, on January 13, 1998, his sentence was reduced to 25 months. *See* Government Exhibit 3.

Based upon petitioner's conviction, a Notice to Appear was issued on September 15, 1998, charging petitioner with being removable under INA § 237(a)(2)(A)(iii) as an alien convicted of an aggravated felony. *See* Government Exhibit 4. Additional charges of deportability were filed against petitioner on November 6, 1998 and January 5, 1999. *See* Government Exhibits 5 & 6. Petitioner was ordered detained during the course of his removal proceedings. *See* Government Exhibit 7.

On March 2, 1999, petitioner appeared before an immigration judge. He was found to be removable as charged and ordered removed to Venezuela. *See* Government Exhibits 10 & 11. His application for withholding of removal was denied. *Id.* Petitioner appealed this decision to the Board of Immigration Appeals (BIA), and on July 29, 1999, the BIA dismissed his appeal. *See* Government Exhibit 13.

While his appeal was pending before the BIA, petitioner filed a petition for writ of *habeas*

*corpus* pursuant to 28 U.S.C. § 2241 in this court. *Machado v. Casterline*, 2:98-cv-2266 (WDLA). Because petitioner challenged his criminal conviction in the U.S. District Court for the Southern District of Florida, this court construed the petition as a Motion to Vacate filed pursuant to 28 U.S.C. § 2255 and transferred the case to the sentencing court. The Southern District of Florida dismissed the petition as time-barred. *Machado v. Casterline*, 1:99-cv-0053 (S.D. Fla.). Thereafter, petitioner filed a second petition for writ of *habeas corpus* in this court, challenging his criminal conviction on the basis of an alleged breach of the plea agreement. *Machado v. Jordan*, 2:99-cv-1156 (WDLA). This court dismissed the petition for lack of jurisdiction. Petitioner appealed to the United States Court of Appeals for the Fifth Circuit which affirmed this court's dismissal. *Machado v. Jordan,* 99-31075 (5th Cir. 2000).

Additionally, between the years 2000 and 2004 the petitioner filed the following litigation in the U.S. District Court for the Southern District of Florida:

1. Six Motions to Vacate pursuant to 28 U.S.C. § 2255 in the U.S. District Court for the Southern District of Florida*, Machado v. U.S.*, 1:00-cv-955 (S.D. Fla.); *Machado v. U.S.*, 1:00-cv-3381 (S.D. Fla.); *Machado v. U.S.,* 1:01-cv-348 (S.D. Fla.); *Machado v. U.S.,* 1:01-cv-1096 (S.D. Fla.); *Machado v. U.S.*, 1:01-cv-2082 (S.D. Fla.); *Machado v. U.S.,* 1:02-cv-20560 (S.D. Fla.).

2. Two *habeas corpus* petitions pursuant to 28 U.S.C. § 2241 seeking to stay his deportation and challenge his removal order, *Machado v. U.S.,* 1:01-cv-1230 (S.D. Fla.); *Machado v. U.S.I.N.S.,* 1:03-cv-20665 (S.D. Fla.).

3. Three civil actions, including one *Bivens* action and two Federal Tort Claims Act claims, *Machado v. Diaz*, 1:01-cv-3811 (S.D. Fla.); *Machado v. United States*, 1:02-cv-22924 (S.D. Fla.); *Machado v. United States*, 1:04-CV-20430 (S.D. Fla.).

Petitioner also filed several appeals of his criminal and civil matters with the United States Court of Appeals for the Eleventh Circuit between 1999 and 2005. *In Re: Gregorio R. Machado*, 99-10121 (11th Cir.); *Machado v. U.S. Attorney General*, 99-12949 (11th Cir.); *Machado v. USA*, 00-

3

10867 (11th Cir.); *In Re: Gregorio Machado*, 00-11994 (11th Cir.); *In Re: Gregorio Machado*, 00-15919 (11th Cir.); *In Re: Gregorio Machado*, 01-10225 (11th Cir.); *Machado v. USA*, 01-11299 (11th Cir.); *Machado v. USA*, 01-12859 (11th Cir.); *Machado v. Diaz,* 02-13060 (11th Cir.); *Machado v. USA,* 03-11741 (11th Cir.); *Machado v. USA*, 03-12527 (11th Cir.); *USA v. Machado,* 03-13156 (11th Cir.); *Machado v. US Dept of INS*, 03-16470 (11th Cir.); *USA v. Machado,* 04-12902 (11th Cir.); *USA v. Machado,* 05-11420 (11th Cir.).

In 2005, petitioner filed a Petition for Review with the Eleventh Circuit, *Machado v. U.S. Attorney General*, 05-14300 (11th Cir.), seeking review of his removal order. On August 29, 2005, the Eleventh Circuit transferred this petition to the Fifth Circuit. The Fifth Circuit dismissed the petition on March 9, 2007. *Machado v. Gonzales*, 05-60921 (5th Cir. 2007).

On July 19, 2004, while detained in Gadsden, Alabama, petitioner filed a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2241, challenging his removal order and seeking to enjoin his removal. *Machado v. Hassell*, 4:04-cv-2217. However, on October 14, 2004, petitioner moved to dismiss his petition without prejudice. This motion was granted on October 21, 2004. *Id.*, docs. 11-12. Thereafter, on October 28, 2004, petitioner filed a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2241 challenging his detention in post-removal-order custody in the U.S. District Court for the Northern District of Alabama. *Machado v. ICE*, 4:04-cv-3110 (N.D. Ala.). After filing this petition, petitioner was apparently transferred to the Oakdale Federal Detention Center. On June 2, 2006, petitioner filed a motion to dismiss his petition without prejudice so that he could re-file in the Western District of Louisiana, where he was incarcerated. On June14, 2006, the Alabama court granted petitioner's motion and dismissed the petition without prejudice. On July 26, 2006 petitioner filed the instant petition challenging his continued detention.

In 1999, following petitioner's administratively final order of removal, the immigration officials began writing to the Consulate General of Venezuela to obtain a travel document for petitioner. *See* Government Exhibit 16.  In response to the initial inquiry, on September 27, 1999, the Consulate General of Venezuela informed the immigration officials that Mr. Machado was a citizen of Venezuela and that a travel document would be issued for him. *See* Government Exhibit 17.  By notice dated November 19, 1999, the Consulate General of Venezuela was notified that Petitioner was scheduled to depart the United States on December 1, 1999. *See* Government Exhibit 18.  However, on November 29, 1999, the Consulate General of Venezuela informed the immigration officials that petitioner's identity had not been "fully identify [sic] by the Venezuelan government" and that no travel document would be issued at this time. *See* Government Exhibit 19.

Since that time, the immigration officials have continued its efforts to obtain a travel document for petitioner by forwarding written requests and making telephonic inquiries. *See* Government Exhibit 20.

By a letter dated January 29, 2001, petitioner wrote to the Ambassador of Venezuela explaining his position that the United States government had not honored its plea agreement with him and detailing his challenge to his removal order. *See* Petitioner's Exhibit E.   Petitioner concluded this letter by stating that "there is no need to issue any traveling documents to facilitate my premature and illegal removal" and requesting Venezuela "not to issue '<u>any</u>' travel documents on my behalf till further notice." *Id.* (Emphasis in original).

The Decisions to Continue Detention issued during the ensuing years often referred to petitioner's letter to the Consulate of Venezuela as an attempt to hinder the removal process and a basis for extending the removal period. *See* Government Exhibits 24, 25, 26.

Beginning in August, 2005, the Immigration & Customs Enforcement began noting that the Venezuelan Consulate had indicated that a travel document would be issued for petitioner once his pending litigation was concluded. *See* Government Exhibits 27, 28, 32, 33. At the evidentiary hearing, petitioner's deportation officer, Ms. Sally Strother, testified that she had spoken with someone in the Venezuelan Consulate on March 19, 2007 who informed her that a travel document would not be issued as long as petitioner had litigation pending. She further testified that she expects that a travel document will be issued in the reasonably foreseeable future once the litigation pending in this court is concluded.[1]

Petitioner testified that he has provided ICE with all of the information that they requested from him and that he has never provided them with false or misleading information. He further testified that he does not believe that a travel document will be issued for him by Venezuela even after the conclusion of all pending litigation. In support of this position, petitioner stated that in August 2005 when he was interviewed by Mrs. Madriz, the Venezuelan Consul in New Orleans, Louisiana, she informed him that a travel document would not be issued for him because his life would be in danger because of his testimony against Cuban officials if he returned to Venezuela. Petitioner seeks to have the court order his release from custody.

The government argues that the petition before this court is petitioner's last pending case and that there is a significant likelihood that a travel document will be issued for petitioner once this case is concluded. Accordingly, the government seeks to have the court dismiss this action without prejudice so that ICE can have an opportunity to obtain a travel document for petitioner.

## LAW AND ANALYSIS

---

[1] A copy of the Fifth Circuit's 3/9/07 dismissal of petitioner's appeal has been faxed to the Venezuelan Consulate. This petition appears to be the last of petitioner's pending litigation.

The issue before the court is whether petitioner's prolonged post-removal-order detention is lawful. The government argues that petitioner's detention is lawful and that petitioner's removal has been delayed because of his court proceedings but that once this case is concluded it is very likely that a travel document will be issued for petitioner. Petitioner claims that his 8 year detention is unlawful and that Venezuela is not likely to issue a travel document for him.

Following an order of removal, the Attorney General is given 90 days to effect the removal of the alien. INA § 241(a)(1). This 90-day period of time is referred to as the removal period. During this removal period, the alien is subject to detention. INA § 241(a)(2). If the alien is not removed during the removal period, the alien is generally released to supervision. INA § 241(a)(3).

Detention can be extended beyond the 90 day removal period in limited circumstances. INA § 241(a)(6) authorizes the continued detention of certain inadmissible or criminal aliens, such as petitioner, if the Attorney General determines that the alien is a risk to the community or unlikely to comply with the order of removal. Because the Supreme Court concluded that indefinite detention of aliens under the circumstances set forth in § 241(a)(6) would raise serious constitutional concerns, it construed the statute to contain an implicit "reasonable time" limitation. *Zadvydas v. Davis*, 121 S.Ct. 2491, 2495 (2001). The Supreme Court held that in order to be constitutional, detention pursuant to INA §241(a)(6) must be limited to a period of the time reasonably necessary to bring about the alien's removal. *Zadvydas,* 121 S.Ct. at 2498. The Supreme Court went on to recognize six months as a presumptively reasonable period of detention following a final order of removal. *Zadvydas*, 121 S.Ct. at 2504.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut this showing. And for the detention to remain reasonable, as the period of prior post-removal confinement

7

grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Zadvydas,* 121 S.Ct. 2505.

Additionally, an alien may be detained beyond the 90 day removal period pursuant to the statutory authority of INA § 241(a)(1)(C).[2] This statute provides for the suspension of the removal period whenever an alien acts in a manner to prevent his removal. This statute, like § 241(a)(6), does not contain an express limitation on the length of time that an alien may be detained. However, as the Ninth Circuit has observed, INA § 241(a)(1)(C) does not present the same constitutional concerns raised by INA § 241(a)(6) because "the risk of indefinite detention that motivated the Supreme Court's statutory interpretation in *Zadvydas* does not exist when an alien is the cause of his own detention." *Pelich v. Immigration and Naturalization Service*, 329 F.3d 1057, 1060 (9th Cir. 2003). Thus, an alien cannot assert a viable constitutional challenge to his indefinite detention when such detention is due to own actions. *Id.* at 1061.

In *Andrade v. Gonzales,* 459 F.3d 538 (5th cir. 2006), the Fifth Circuit reiterated that the Supreme Court's holding in *Zadvydas* "creates no specific limits on detention"; that "'an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.'"; and that "[t]he alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Andrade*, 459 F.3d at 543, quoting *Zadvydas*, 121 S.Ct. at 2505. In that case, Andrade "offered nothing beyond his conclusory statements suggesting

---

[2] **(C) Suspension of period**
The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

8

that he [would] not be immediately removed to Cape Verde following the resolution of his appeals," and the Fifth Circuit found his constitutional challenge to his detention to be without merit. *Andrade,* 459 F.3d at 543-544.

In this case, the facts before the court establish that petitioner has been in post-removal-order detention for the exceptionally long period of 8 years. However, there is significant evidence in the record that, unlike the detainees in *Zadvydas*, petitioner's detention is not potentially permanent and that petitioner is responsible for his own plight. The evidence before the court establishes that petitioner's identity as a citizen of Venezuela was confirmed shortly after his removal order became administratively final in 1999. Further, Ms. Strother testified that ICE is in possession of petitioner's birth certificate, so there are currently no issues related to petitioner's identity which are likely to hinder his removal to Venezuela. The evidence before the court suggests that Venezuela has not refused to issue a travel document for petitioner but that it is merely awaiting petitioner's exhaustion of all judicial remedies before it does so. While petitioner has a legal right to seek judicial relief, it is apparent that the continuous appeals of his removal order and his criminal conviction as well as his civil litigation have hampered the ability of ICE to deport him. Therefore, the court finds that once this *habeas* proceeding is concluded, there is a significant likelihood that petitioner will be removed in the reasonably foreseeable future.

In light of the Supreme Court's admonition that "for the detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink", and in light of the fact that petitioner has been detained for 8 years, the government should make every effort to effect petitioner's removal as expeditiously as possible at the conclusion of this proceeding. If a travel document is not issued for petitioner in due course once this proceeding is concluded, ICE will not be able to credibly argue in any future petition for writ

of *habeas corpus* that petitioner's continued detention remains reasonable absent additional actions on Petitioner's part to hinder his removal. .

Accordingly,

IT IS RECOMMENDED that the petition for writ of *habeas corpus* be DENIED and DISMISSED WITHOUT PREJUDICE.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, March 27, 2007.

ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE